**UNITED STATES OF AMERICA**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,
        Plaintiff,

                            Docket No. 16-CR-20197

V.

                            Hon: DENISE PAGE HOOD

JOSEPH SAAD,
        Defendant.
_____/


**DEFENDANT'S EMERGENCY MOTION FOR**
**IMMEDIATE REDUCTION OF SENTENCE**
**(COMPASSIONATE RELEASE)**

Joseph Saad, through his counsel, Mark A. Satawa, respectfully moves this

Honorable Court, pursuant to the First Step Act of 2018 and 18 U.S.C. §

3582(c)(1)(A)(I), to modify Mr. Saad's 72 month term of imprisonment to time

served, and to impose a special condition that he serve a period of home confinement

on supervised release. Such a modification will effectively allow him to finish the

remaining portion of his prison sentence on home confinement, which will in turn

allow him to protect himself, the BOP, and the community from the spread of the

novel coronavirus 2019 ("COVID-19"), by sheltering in place at his residence. This

compassionate release and modification of sentence is necessary in light of his age,

71, and serious underlying and pre-existing medical conditions. These conditions

1

include, but are not limited to, a recurrence of cancer, as well as chronic kidney disease, hypertension, pulmonary hypertension, sleep apnea, shingles, and frozen thigh from an overdose of coumadin, and in combination place him in the COVID-19 highest-risk category.

Note, on April 14, 2020, the Undersigned Counsel attempted to seek concurrence in this Motion, and the requested relief, pursuant to LR 7.1(a), by sending an email to all three attorneys of record listed for the Government on the Court's PACER docket system. AUSA Wayne Pratt responded that the Government would not agree to the relief requested.

## **Introduction**

On June 22, 2017, this Honorable Court sentenced Mr. Saad to 72 months incarceration for distribution of prescription drugs, a non-violent offense.

Title 18 U.S.C. §3582 states that the administrative procedure for requesting a compassionate release is through the warden of the BOP facility where the inmate is located. The Defendant/Movant made his request to the Warden, first pursuant to the CARES ACT Program Statement 01-2020, for temporary transfer to home confinement on April 7, 2020. Upon learning that he had been exposed to Covid-19, he made a second request under the CARES ACT Program Statement 01-2020 on April 10, 2020. The requests were served on the warden by incorrect name

initially, that was corrected and the requests were resubmitted, with an apology. Finally, on April 13, 2020, a request for compassionate release/reduction was made to the warden under the First Step Act by express mail and via email to the warden, the executive assistant, and counsel for FCI Milan. On April 14, 2020, the legal department at FCI Milan sent Co-counsel for Mr. Saad (Linda Sheffield of Atlanta, GA) an email that stated that Mr. Saad's request for release had been forwarded "to inmate Saad's unit team for their review of Home Confinement as it pertains to your client."

## Discussion

### I.     Jurisdiction of This Court: Exhaustion.

The First Step Act (FSA) does not require mandatory administrative exhaustion for motions for reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). The plain text of the FSA gives courts power to consider a motion for reduction in sentencing without requiring full administrative remedies.

Mr. Saad has not waited the 30 days provided by 18 U.S.C. 3582(c)(1)(A), and it is Saad's position that in this instance exhaustion is not required. The FSA's compassionate release provision grants the sentencing court the power to reduce a prisoner's sentence in two circumstances: when "(i) extraordinary and compelling

reasons warrant such a reduction," or "(ii) the defendant is at least 70 years of age" and meets other criteria. The statutory text does not require exhaustion of administrative remedies in all contexts. Instead, it permits courts to

> modify a term of imprisonment once it has been imposed:
>
> (1) in any case—
>
> (A) . . . the court, upon motion of the Director of the Bureau of Prisons or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . .

18 U.S.C.§ 3582(c)(1)(A). This language does not make exhaustion of administrative remedies mandatory. The plain text gives this Court the power and authority to reduce a sentence even without exhaustion of remedies in those contexts. The Court has such power whenever the Director of the Bureau of Prisons makes the motion or "the lapse of 30 days from the receipt of [a] request by the warden of the defendant's facility . . . ." *Id*.

The Defendant respectfully suggests that there are three circumstances where failure to exhaust may be excused: 1) Exhaustion may be unnecessary where it would be futile, either because agency decisionmakers are biased or because the agency has already determined the issue; 2) exhaustion may be unnecessary where the administrative remedy process would be incapable of granting adequate relief; 3) exhaustion may be unnecessary where pursuing agency review would subject

4

plaintiffs to undue prejudice. *See*, *United States of America v. Wilson Perez*, USDC SDNY 17.Cr. 513 (4/1/2020), citing *Washington v. Barr*, 925 F. 3d 109, 118 (2d Cir. 2019) (citing *McCarthy v. Madigan*, 503 U.S. 140, 146-47 (1992).

The courts' power under § 3582(c)(2) also supports this view that administrative exhaustion is not jurisdictionally required. Subsection (c)(2) is another provision that grants courts the power to "reduce the term of imprisonment." In subsection (c)(2), the court may act "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. §994(o)," "after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . ." 3482(c)(2).

Circuits have found that the district courts have jurisdiction to consider the motion to reduce a sentence because the courts are empowered generally to have jurisdiction over federal criminal cases. In other words, section 3582(c) is not the source of the court's jurisdiction. *See U.S. v. Taylor*, 778 F.3d 667, 671 (7th Cir. 2015) ("[Section] 3582 is not part of a jurisdictional portion of the criminal code but part of the chapter dealing generally with sentences of imprisonment. . . [n]or is

subsection (c) phrased in jurisdictional terms.")[1] Accordingly, §3582(c) generally should not be understood to impose jurisdictional prerequisites related to exhaustion.

When the movant is facing irreparable harm and futility, courts have consistently waived exhaustion of administrative remedies. *Garza v. Davis*, 596 F.3d 1198, 1203-04 (10th Cir. 2010) (recognizing futility exception in context of § 2241 petition); *Woodall v. Federal Bureau of Prisons*, 432 F.3d 235, 239 n.2 (3d Cir. 2005) ("[E]xhaustion would be futile, given that Woodall is not challenging the application of the BOP regulations, but their validity"); *Elwood v. Jeter*, 386 F.3d 842, 844, n.1 (8th Cir. 2004); *Fournier v. Zickefoose*, 620 F.Supp. 2d 313, 317 (D. Conn. 2009); *Boucher v. Lamanna*, 90 F.Supp. 2d 883, 887 (N.D. Ohio 2000) (concluding that exhaustion of administrative remedies would be futile where the BOP's policy on categorizing the prisoner's offense as a violent crime was mandatory, the issue was a legal one that the BOP had consistently defended, and the potential for immediate release counseled timely consideration of the petitioner's case).[2]

---

[1] *See also U.S. v. Calton*, 900 F.3d 706, 710-11 (5th Cir. 2018) (*citing U.S. v. Caraballo-Martinez*, 866 F.3d 1233, 1243 (11th Cir. 2017); *U.S. v. May*, 855 F.3d 271, 274-75 (4th Cir. 2017); *U.S. v. Trujillo*, 713 F.3d 1003, 1005 (9th Cir. 2013); *U.S. v. Green*, 886 F.3d 1300, 1306 (10th Cir. 2018) (rejecting claim of jurisdictional bar).

[2] *See also Chevrier v. Marberry*, 2006 WL 3759909, *2-3 (E.D. Mich. Dec. 20, 2006); *Cushenberry v. Federal Medical Center*, 530 F.Supp. 2d 908, 912 (E.D. Ky. 2008); *Zucker v. Menifee*, 2004 WL 102779, *4 (S.D.N.Y. Jan. 21, 2004); *Snyder v.

In the compassionate release context in particular, courts have recognized that under the right circumstances, seeking relief from BOP can be futile, and so, exhaustion of administrative remedies is waived. *Thody v. Swain*, 2019 U.S. Dist. LEXIS 226582,* 5 (C.D. Ca. Nov. 26, 2019) (*citing Fraley v. United States Bureau of Prisons,* 1 F.3d 924 (9th Cir. 1993) (where administrative appeal to Regional Director certainly denied request based on BOP policy, further application for administrative remedies would be futile)); *Merth v. Puentes*, 2019 U.S. Dist. LEXIS 114799, *8 (E.D. Ca. July 10, 2019) (holding administrative exhaustion of FSA's good time credits provision futile and so waived).[3]

These conclusions are also supported by other provisions in the FSA. Specifically, the Act carves out notice and expedited administrative consideration for prisoners with terminal illnesses. 18 U.S.C. § 3582(d).  Both the language of the FSA and the legislative history support the conclusion that full exhaustion of administrative remedies is subject to exceptions, and it is not mandatory.

---

*Angelini*, 2008 WL 4773142, *2 (E.D.N.Y. Oct. 27, 2008); *Ross v. Fondren*, No. 08- 325, 2008 WL 4745671 (D. Minn. Oct. 29, 2008); *Kelly v. Daniels*, 469 F.Supp. 2d 903, 904 (D. Or. 2007); *Scott v. Lindsay*, 2007 WL 2585072, at *2 (E.D.N.Y. Sept. 10, 2007).

[3] *Cf U.S. v. Mills*, 2019 U.S. Dist. LEXIS 10954, *3 (M.D.Fl. January 23, 2019) (prisoner cannot invoke futility of administrative remedies when he requested compassionate release before the enactment of FSA).

The First Step Act provides that the defendant has the authority to make this motion to the warden of defendant's facility, and the warden has the authority to make this recommendation to the central office who forwards this to the sentencing judge for action. Mr. Saad's immediate concern is that he has a recurrence of cancer, which the institution has not seen fit to further test as recommended by the doctor who saw him at the hospital visit, coupled with Mr. Saad's reported exposure to Covid-19, has escalated this Case to one of extreme urgency.

Further, the institution has removed funds from Mr. Saad's commissary account to pay for his medical December 2019 medical records which have not been provided to Mr. Saad. As a result, this request is being made upon information and belief, based on Mr. Saad's recollections from his hospital visit and what the doctor told him, and upon medical records presented to this Court at sentencing. It is requested that the medical records requested and paid for by Mr. Saad be provided to this Court by the Bureau of Prisons immediately.

Finally, Mr. Saad should be excused from exhausting his administrative remedies because the BOP does not have any policy in place to consider requests based on COVID-19, so any such request would be futile. To date, the BOP's response to the COVID-19 pandemic has not included the urgent identification and

consideration for early release those prisoners who are at a higher risk from this disease.[4]

Therefore, Mr. Saad's request for urgent compassionate release based on the COVID-19 pandemic will be futile because BOP's policy response does not currently include any emergency or urgent consideration of early release or the recommendation for a reduction in sentence on the basis of the COVID-19 pandemic. Since BOP has not created an emergency administrative remedy for prisoners at serious risk from COVID-19, seeking such urgent administrative relief constitutes an exception to the exhaustion requirement on the basis of futility. *See Fletcher v. Menard Correctional Center*, 623 F.3d1171, 174 (7th Cir. 2010) ("If it takes two weeks to exhaust a complaint that the complainant is in danger of being killed tomorrow, there is no 'possibility of some relief' and so nothing for the prisoner to exhaust").

## II. Reasons Action by This Honorable Court is Warranted Now.

Congress did not define what would constitute an "extraordinary and compelling reason" warranting a reduction of a sentence under § 3582(c). Indeed, the legislative history confirms that it intended to grant federal sentencing courts

---

[4]  *See* Federal Bureau of Prisons COVID-19 Action Plan, https://www.bop.gov/resources/news/20200313_covid-19.jsp (March 13, 2020).

broad discretion to make those determinations on a case-by-case basis, and to reduce fundamentally unfair sentences where such reasons exist.

In recent weeks, COVID-19 has spread throughout the United States, infecting thousands of Americans and inflicting many with severe respiratory illness; many Americans have perished.[5] On March 11, 2020, the World Health Organization described the COVID-19 outbreak as a global pandemic. COVID-19 poses a fatal risk to people 60 years of age and older and those with preexisting conditions.[6]

Joseph Saad is a 71 year old male (72 this July), who suffers from chronic or serious medical problems, who is believed to have a recurrence of cancer (which was discovered in December 2019), with no further action taken, although further medical steps were recommended. Mr. Saad has served approximately half of his 72-month sentence.

---

[5]  *See* generally CDC: COVID-19 Situation Summary, available at https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/summary.html

[6] *See* Centers of Disease Control and Prevention, Coronavirus Disease 2019 (COVID-19) Are You at High Risk for Severe Illness? (March 12,2020), https://bit.ly/2vgUt1P; World Health Organization, Q&A on coronaviruses (COVID 19), https://www.who.int/news-room/q-a-detail/q-a-coronaviruses (those at greater risk from COVID-19 include "older persons and persons with pre-existing medical conditions (such as high blood pressure, heart disease, lung disease, cancer or diabetes)" (March 9, 2020)).

The First Step Act benefits the elderly, who have served over half their sentence, and who suffer from chronic health concerns, and are on a terminal track. Mr. Saad appears to fit this criteria, as there is a concern that the cancer has recurred, for which he has not been tested 5 months after the suspected new growth was believed to have been spotted, and now, this vulnerable, elderly gentleman has been exposed to the novel coronavirus by his cellmate, and is in isolation.

Mr. Saad is in the highest risk category of individuals who face grave health consequences or death from exposure to COVID-19. These conditions did not develop during his incarceration; he has suffered from these conditions for a long time, and they were brought to the Court's attention at the time of sentencing.

It is requested that this Court order that Mr. Saad be immediately released pursuant to the First Step Act. The coronavirus is now reported to exist amongst staff and inmates at FCI Milan, and the Federal Bureau of Prisons reportedly is not testing anyone who is not seriously ill, according to its public website. It is anticipated that the coronavirus is more widespread in the BOP than reported, and it is clear that Mr. Saad has been exposed and is not being protected as he should be due to his age and his poor health, and that his life is now at extreme risk.

### III. Case History.

Mr. Saad is a low security inmate, who was sentenced to a term of 72 months for conspiracy to unlawfully distribute controlled substances. Mr. Saad operated a healthcare business, and a physician he hired was unlawfully prescribing prescription medications, with Mr. Saad's knowledge. He entered a timely plea of guilty. He was sentenced by this Honorable Court on June 22, 2017. At this time Mr. Saad has served approximately half of his 72-month sentence.

### IV. Extraordinary and Compelling Reasons for Release.

According to reports from Mr. Saad, in December of 2019, he was sent out from FCI Milan to see doctors at St Joseph's Hospital, Michigan, who diagnosed Mr. Saad with suspected recurrent bladder cancer, in addition to chronic kidney disease, hypertension, pulmonary hypertension, sleep apnea, shingles, and frozen thigh from an overdose of coumadin. The federal prison staff in Butner, NC had given him an overdose of coumadin. Mr. Saad was not taken back to the hospital for additional testing concerning the suspected return of cancer. The Undersigned Counsel is attempting to secure the medical records. Requests from Mr. Saad to medical at FCI Milan for his records have gone unanswered. He was told he would receive them after a period of 30 days, he has paid for those records, yet the 30 days (and more) have passed without the records being provided. Mr. Saad is proceeding

on reported information, although records have been requested and paid for to support this claim.

Upon information and belief, Mr. Saad was diagnosed with A-fib while in Butner NC. He was surgically treated at one of their prison hospitals. In 2015, while in the community, he had quadruple by-pass, arrythmia, 4 knee replacement surgeries, poor vision (diabetes), neuropathy, hearing loss, compressed back discs, shortness of breath, rhinopathy (Sinusitis), and severe headaches.

Now, with the corona virus and confirmed prison (staff and inmate) cases at Milan, his advanced age, and medical condition, Mr. Saad is among those elderly and medically fragile inmates who are in the highest at risk category – those likely to be doomed to succumb to the novel coronavirus unless they are sent home. Mr. Saad's cellmate was reportedly sent to the hospital with coronavirus, and Mr. Saad reports he is now in quarantine in the SHU, having been exposed. This is very bad news, considering his advanced age, poor health and the suspicion that he may have a recurrence of cancer.

This Honorable Court expressed concern at sentencing that the Bureau of Prisons be able to provide for Mr. Saad's medical needs.

> The Court: And so I'm concerned that your medical care be taken care of in the prison and that you not have an opportunity to not have the care that you might need. I'm also to consider whether any other correctional treatment would be available to you and that includes treatment for things like substance abuse meaning of illegal or legal substances and also any gambling or other kinds of addictions.

Sentencing at p. 40

> The Court: I have noted that in the Presentence Report I think it lists all of the medications that you take on page 15 and I have noted that there are not just one issue, meaning the bladder cancer and the ability for it to become more aggressive, but also that there is the knee and the heart problem and the diabetic problem. And there are numerous of them outlined in Paragraph 54. And I hope I'm not saying anything that is inappropriate to say relative to your health conditions, but there are a lot of these. And I'm concerned that there be some management of that, that maybe you can't always get in the prison system.

Sentencing at p. 41 (attached)

Now the major concern of the Court has manifested - Mr. Saad appears to have a possible recurrence of the cancer, which he advised his family was discovered at a hospital visit several (5) months ago, where an imaging was requested by the hospital to determine whether the cancer has returned, yet no further action was taken by the prison. Mr. Saad not only has a series of vulnerable preexisting conditions which make him more susceptible to the coronavirus, but he may also have a recurrence of cancer, left undiagnosed or treated, making him even more vulnerable.

Mr. Saad has maintained clear conduct except for two reported inappropriate comments in the food line with a serving inmate, for which he lost use of the telephone for two weeks. His age and the medical treatments likely contributed to the comments, and that it was intentional misbehavior. He has had no further incident reports. He is unlikely to be a repeat offender.

Mr. Saad's medical condition, combined with his remaining time remaining to serve on his sentence and the high risk posed by COVID-19 (to which he has reportedly been exposed) clears the high bar set by 3582(c)(1)(A). As discussed in the recent opinion and order in *United States v Wilson Perez*,[7] U.S.S.G. 1B1.13 n.1(D) defined two reasons for release: (1) "extraordinary and compelling circumstances exist where the defendant  is suffering from serious physical or medical condition….that substantially diminishes the ability to provide self-care within the environment of a correctional facility and from which he is not expected to recover"; (2) 1B1.13, n.1(D) authorizes release based on "extraordinary and compelling reasons other than, or in combination with, the [other] reasons described."

The court in *Perez* found that the seriousness of the disease coupled with the inmate's inability to distance himself from others and to protect himself in his close-quarters confinement from other inmates and staff who could be infected with COVID-19, were facts relevant to consider in evaluating whether or not the inmate was a serious candidate for release under the First Step Act.

As Mr. Saad entered prison, he was in recovery from a serious illness, and there was legitimate concern expressed by this Court that he would not be cared for

---

[7] *United States v Wilson Perez*, Case No. 17 Cr. 513-3 (AT), Southern District of New York, Judge Analisa Torrres, April 1, 2020.

in prison. Now, it seems that he has a recurrence of cancer, coupled with other pre-existing illnesses from which he suffers, and due to the close quarters and the inability to follow social distancing, to wear protective gear, or to follow any of the CDC protocols to be safe from COVID-19, he has been exposed. He was not being well cared for before the COVID-19 pandemic. He is now unable to be transported to the hospital to be tested for cancer as he is reported to be in quarantine for exposure to COVID-19. It is respectfully suggested that he clearly meets the criteria to be considered for release to his term of supervised release, the conditions of which are allowed to be restrictive, as this Court orders.

In *United States v. Doshi*, 13-CR-20349, filed 3/31/2020, Senior Judge Arthur J. Tarnow of this District granted release to home confinement to Rajesh Doshi, who was convicted of a healthcare fraud conspiracy. Doshi's motion for judicial recommendation to home confinement was granted without his pursuing administrative remedies to the Bureau of Prisons. The *Doshi* Court found the conditions in the Bureau of Prisons to are susceptible to disease and that "high density prison populations makes federal prisons ideal transmission grounds for the virus."   The court also cited *U.S. v. Garlock*, 18-CR-00418-VC-1, 2020 ND California 3/25/2020, and *Basank v. Decker*, 20 CIV2518 2020WL 1481503(3/25/2020) ("District Courts have also recognized the health risks—to

inmates, guards and the community at large—created by large prison populations."

*Id*.)

## V.  A reduction in sentence is warranted considering the other sentencing factors.

In determining whether Mr. Saad's sentence should be reduced, this Court must decide, *inter alia*, whether he presents a danger to the safety of any other person or to the community, as provided in 18 U.S.C. §3142(g) and USSG §1B1.13(2). If he does not, the court should then look to the factors outlined in 18 U.S.C. §3553(a). All these factors weigh strongly in favor of release in his Case.

Mr. Saad, 71, was convicted of a nonviolent offense, that involved the selling of prescription drugs in a clinic he owned.  He has very strong family support, and has worked fulltime his entire life. He does not present a danger to the safety of any person or the community. He accepted responsibility for his crime and has expressed explicit, repeated and sincere remorse. The punishment he has received is sufficient to deter any future misconduct. Release of an elderly and frail man during the peak of global epidemic will not encourage future owners of medical clinics. In terms of unwanted sentencing disparities, the doctor who was writing the fraudulent prescriptions in this Case received a sentence of only ONE DAY in custody, with credit for one day time served.

**VI. Residence if transferred to Supervised Release**.

If this request for compassionate release/RIS is granted under the First Step Act, Mr. Saad will live with his son, Casey Saad (see PSR paragraph 49), who resides at 6560 Kingsbury, Dearborn Heights, MI 48127. Mr. Saad has a large family who will support him. This is a private residence where he has the ability to quarantine for 14 days. He has the ability to secure medical insurance once he is released, and will obtain insurance to pay for his medical needs through Medicare.

## Conclusion

With the passage of the First Step Act, Congress emphasized the imperative of reducing unnecessary incarceration and avoiding unduly punitive sentences that do not serve the ends of justice. Mr. Saad asks for the mercy of the court to allow him to self isolate during this pandemic, and respectfully requests that this Honorable Court take this opportunity to grant a reduction in his sentence based on extraordinary and compelling reasons.

WHEREFORE, and for all of the reasons argued in this Petition, Mr. Saad requests that this Honorable Court:

A. Schedule an immediate hearing, done remotely, via Polycom, Zoom, or a similar online, video conference method;

B. In the alternative, Mr. Saad requests that the Court render a decision on the Pleadings in this Case, without oral argument;

C. Order Mr. Saad from the BOP immediately.


Respectfully Submitted,

**SATAWA LAW, PLLC**

s/ *Mark A. Satawa*
Attorney for Defendant
26777 Central Park Blvd, Suite 300
Southfield, Michigan 48076
Phone: 248-356-8320
E-Mail: Mark@satawalaw.com

Date: April 15, 2020