UNITED STATES OF AMERICA
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,
    Plaintiff,

Docket No. 16-CR-20197

V.

Hon: DENISE PAGE HOOD
Chief Judge

JOSEPH SAAD,
    Defendant.
_____/

**REPLY TO GOVERNMENT'S RESPONSE TO
DEFENDANT'S EMERGENCY MOTION FOR
IMMEDIATE REDUCTION OF SENTENCE
(COMPASSIONATE RELEASE)**

    Joseph Saad, through his counsel, Mark A. Satawa, and files this Reply to the Government's Response to the Defendant's Motion to modify Mr. Saad's remaining portion of his 72 month term of imprisonment to home confinement pursuant to the First Step Act of 2018 and 18 U.S.C. § 3582(c)(1)(A)(I).

    The issues raised by Mr. Saad and the Government before this Honorable Court have been recently addressed by other courts throughout the Country, and an administrative agency. Accordingly, this Court is referred to the following in support of Mr. Saad's Motion:

1

1. **Safety of the prison environment and whether it just as safe in the prison as in the community.**

In its Response, the Government argues that the

> Bureau of Prisons is also working around the clock to protect any inmates who are not eligible for discretionary release. Inmates at every institution, including FCI Milan, are being protected by a new shelter-in-place protocol to decrease the spread of the virus. . . . the Bureau of Prisons had already instituted a number of precautionary measures to reduce the risk of infection. A full run-down of those measures is available on the Bureau of Prisons' COVID-19 Action Plan website. . . . these measures will help federal inmates remain protected from COVID-19 and ensure that they receive any required medical care during these difficult times.

Government's Response, ECF # 62, p 9.

Apparently the correction officers who work at the Government's own facilities disagree. On March 31, 2020, the Council President of the correctional officers union filed a complaint to OSHA (Occupational Safety and Hazard Administration) alleging violations of OSHA elevating the complaint to one of "Imminent Danger Report."[1] In the complaint it is alleged that the BOP guidelines imposed by Federal Bureau of Prisons Assistant Director of Health Services and Captain Sylvie Cohen, M.D., Branch Chief for Occupational Safety and Health, directed staff throughout the BOP who have come into contact with or have been in

---

[1] Pursuant to OSHA of 1970, Executive Order 12196, 29 CFR 1960.8, Agency's Responsibilities, BOP Program Statement 1600.011, signed by Shane Fausey, Council President.

close proximity with individuals who show or have shown symptoms of COVID-19, ***to report to work and not be self-quarantined and not be quarantined for 14 days, per CDC guidelines***. (Emphasis added) The complaint[2] states in detail the violations by the BOP, ordering staff back to work, the transporting of sick inmates, the BOP failure to mitigate or prevent exposure to the virus, mandating sick or potentially sick BOP employees to report to work.[3] This places not only staff in danger, but also inmates at extreme risk of contracting the disease, as they are not provided with protective gear, hand sanitizer (as are staff) and who are not able to social distance.

Health professional throughout the country are warning that it is difficult, if not impossible, to safely address the spread of Covid-19 in prisons. For example, in the case of *United States v. Arguijo*, 20-50080, United States Court of Appeals for the Ninth Circuit, an *Amicus brief* was filed by a team of medical, public health, and human rights experts in support of the release of inmates due to COVID-19.[4] The Amici Curiae are experts in infectious diseases, healthcare policy, correctional healthcare, human rights and other related fields, who have spent decades studying the provision of healthcare in correctional facilities. Based on their experience, and their review of available information on the COVID-19 pandemic, it is their view

---

[2] The complaint is attached to the Appendix of this Response.

[3] *See* attached complaint for details.

[4] The *Amicus brief* is attached to the Appendix of this Response

that subjecting anyone to short-term confinement in a jail subjects them and the broader community to a heightened risk of infection, hospitalization and death.

In response to a lawsuit filed by the ACLU, a federal judge in Ohio just ordered the BOP to release inmates at FCI Elkton.[5] U.S. District Judge James Gwin gave the BOP one day to identify certain inmates at Federal Correctional Institution Elkton, specifically those who are over 65 years old or who have certain pre-existing conditions that put them at risk of serious illness associated with Covid-19.[6] The Judge further ordered that the BOP must determine who would be released on parole, furlough, compassionate release, home confinement or otherwise within two weeks. Individuals that the BOP determines cannot be released, must be moved to other prisons "where appropriate measures, such as testing and single-cell placement, or social distancing, may be accomplished."

Judge Gwin was very critical of the BOP and prison staff for failing to test enough inmates, as well as having "altogether failed to separate its inmates at least six feet apart, despite clear (Centers for Disease Control and Prevention) guidance for some time that such measures are necessary to stop the spread and save lives."

---

[5] *Wilson v Williams*, Case No. 20-00794, Northern District of Ohio (April 22, 2020).

[6] Opinion and Order is attached to the Appendix of this Response

Case 2:16-cr-20197-DPH-MKM   ECF No. 63   filed 04/23/20   PageID.596   Page 5 of 7

Milan is infected with COVID-19, and Mr. Saad is in danger due to his age and health. He meets the CDC standard of a vulnerable person who, if he contracts this deadly virus, will most likely perish. According to BOP data, as of 4/21/2020 there are 39 inmates and 42 staff at FCI Milan that have been diagnosed with COVID-19.[7] Importantly, on April 2, the first date data from the BOP is available, the numbers were 0 inmates and 1 staff member. The increase is just 3 weeks is stunning. And these numbers only reflect the staff and inmates who were tested. It is well established that tests are limited, that COVID-19 is carried and passed on by those who show no symptoms at all, and that most of those who are symptomatic are not being tested.

**2. The exhaustion requirement and the reasonableness of the government's position.**

The Government *United States v. Raia*, __ F.3d __, No. 20-1033, 2020 WL 1647922, at *1 (3d Cir. Apr. 2, 2020) I support of its argument that Mr. Saad's Motion be denied because he failed to exhaust administrative remedies. However, there is strong debate on this subject throughout the country, with courts ruling on both sides of this issue. *See, e.g., United States v. Scparta*, 18-cr-578, U.S. District Court, Southern District of New York, 4/19/2020.[8]

---

[7] BOP data is attached to the Appendix of this Response.

[8] Opinion and Order is attached to the Appendix of this Response.

In *Scparta*, District Court Judge Alison Nathan, found that Congress specifically designed the First Step Act, unlike PLRA, to result in expeditious review of prisoner applications and to improve the health and safety of inmates, prison staff and the community. Judge Nathan found that the exhaustion requirement is excused in such cases, since exhaustion requirements would negate the purpose of the Act, "Without the application of equitable exceptions, prisoners bringing compassionate release motions due to COVID-19 may never obtain timely judicial review before the virus takes its toll."

WHEREFORE, Mr. Saad requests that this Honorable Court:

A. Schedule an immediate hearing, done remotely, via Polycom, Zoom, or a similar online, video conference method;

B. In the alternative, Mr. Saad requests that the Court render a decision on the Pleadings in this Case, without oral argument;

C. Order Mr. Saad from the BOP immediately.

Respectfully Submitted,

**SATAWA LAW, PLLC**

s/ *Mark A. Satawa*
Attorney for Defendant
26777 Central Park Blvd, Suite 300
Southfield, Michigan 48076
Phone: 248-356-8320
E-Mail: Mark@satawalaw.com

Date: April 23, 2020