**GhUNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

    Plaintiff,                                      Case No. 16-20197
                                                         HON. DENISE PAGE HOOD

v.

JOSEPH SAAD,

    Defendant.
_____/

**AMENDED ORDER GRANTING DEFENDANT'S EMERGENCY
MOTION FOR IMMEDIATE REDUCTION OF
SENTENCE (COMPASSIONATE RELEASE) [ECF No. 60]**

**I.    Introduction**

Defendant has filed an Emergency Motion for Immediate Reduction of Sentence (Compassionate Release) [ECF No. 60], pursuant to the First Step Act of 2018 and 18 U.S.C. § 3582(c)(1)(A)(I). Defendant asks the Court to modify his term of imprisonment (72 months, of which Defendant has served approximately 33 months) to time served and to impose a special condition that he serve a period of home confinement on supervised release.

**II.    Background**

Defendant was sentenced on June 22, 2017, to serve 72 months in custody and 12 months supervised release on Count 1 of the Indictment, Unlawful Distribution of

Controlled Substances, a non-violent offense. Defendant operated a healthcare business, and a physician he hired was unlawfully prescribing prescription medications (opioids). The Government maintains that he was the most culpable person in that 1.4 million dosage "pill mill." Based on that role, Defendant's sentencing guideline calculation was 210-262 months. Pursuant to the terms of his plea agreement, however, his sentence was limited to 120 months. The Court granted Defendant a downward variance at sentencing based on Defendant's medical conditions at that time.

Defendant is 71 years old, is housed at FCI Milan, and has served almost half of his custodial sentence. Defendant suffers from serious underlying and pre-existing medical conditions, including, but not limited to, chronic kidney disease, hypertension, pulmonary hypertension, sleep apnea, shingles, and a frozen thigh from an overdose of coumadin given by prison officials. Defendant believes that prison officials diagnosed him at one point with "a-fib," which was surgically treated at a prison hospital. Defendant reports that, prior to incarceration, he had quadruple bypass, arrythmia, four knee replacement surgeries, poor vision (diabetes), neuropathy, hearing loss, compressed back discs, shortness of breath, rhinopathy (Sinusitis), and severe headaches. Defendant also states that doctors at St. Joseph's Hospital in Ann Arbor, Michigan, diagnosed him with suspected recurrent bladder

cancer in December of 2019. Although further medical steps were recommended, Defendant states that no further testing or follow up has been conducted.[1] Defendant contends that this combination of conditions place him in the COVID-19 highest-risk category.

On April 7, 2020, Defendant made a request to the warden at FCI Milan, pursuant to the CARES ACT Program Statement 01-2020, for temporary transfer to home confinement. On April 10, 2020, upon learning that he had been exposed to COVID-19 (his cellmate allegedly tested positive for COVID-19), he made a second request under the CARES ACT Program Statement 01-2020, 2020. On April 13, 2020, Defendant made requests for compassionate release/reduction by: (1) express mail to the warden under the First Step Act; and (2) email to the warden, the executive assistant, and counsel for FCI Milan. On April 14, 2020, the legal department at FCI Milan sent co-counsel for Mr. Saad (Linda Sheffield of Atlanta, GA) an email that stated that Defendant's request for release had been forwarded "to inmate Saad's unit team for their review of Home Confinement as it pertains to your client."

### III. Analysis

---

[1]Defendant states that he has requested his records from medical at FCI Milan, but the requests have gone unanswered, even though he was told he would receive them after a period of 30 days, he has paid for those records, and the 30 days (and more) have passed without the records being provided.

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify terms of imprisonment as follows (emphasis added):

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—**the court**, upon motion of the Director of the Bureau of Prisons, or **upon motion of the defendant** after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, **may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)**, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
> > (i) extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i) therefore requires that a defendant must satisfy both the exhaustion requirement and demonstrate that "extraordinary and compelling reasons" warrant a reduction of his sentence.

A. *Exhaustion*

The Government asserts that Defendant does not qualify for compassionate release because he has not exhausted his efforts for compassionate release from the BOP, as required under 18 U.S.C. § 3582(c)(1)(A). The Government states that, for

4

that reason, the Court does not have jurisdiction to address Defendant's COVID-19-based argument. The Court acknowledges that a number of courts have denied applications for sentence modification under § 3582(c)(1)(A) brought on the basis of the risk posed by COVID-19, citing the fact that the defendant failed to exhaust administrative remedies. *See, e.g.*,*United States v. Alam*, Case No. 15-20351, 2020 WL 1703881, at *2 (E.D. Mich. Apr. 8, 2020) (Cox, J.) (quoting *Ross v. Blake*, 136 S.Ct. 1850, 1857 (2016)) (denying a motion for compassionate release due to the COVID-19 outbreak for failure to exhaust) (also citing may cases from across the country holding the same); *United States v. Zywotko*, No. 2:19 Cr. 113, 2020 WL 1492900, at *1 (M.D. Fla. Mar. 27, 2020); *United States v. Garza*, No. 18 Cr. 1745, 2020 WL 1485782, at *1 (S.D. Cal. Mar. 27, 2020); *United States v. Eberhart*, No. 13 Cr. 00313, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020); *United States v. Hernandez*, No. 19 Cr. 834, 2020 WL 1445851, at *1 (S.D.N.Y. Mar. 25, 2020); *United States v. Gileno*, No. 19 Cr. 161, 2020 WL 1307108, at *3 (D. Conn. Mar. 19, 2020).

Defendant counters that there are circumstances where failure to exhaust may be excused as unnecessary, specifically where: (1) it would be futile, either because agency decision makers are biased or because the agency has already determined the issue; (2) the administrative remedy process would be incapable of granting adequate

relief; or (3) where pursuing agency review would subject the prisoner to undue prejudice. Relying on *United States of America v. Wilson Perez*, 17 Cr. 513 (S.D.N.Y. 4/1/2020) (citing *Washington v. Barr*, 925 F. 3d 109, 118 (2d Cir. 2019) (citing *McCarthy v. Madigan*, 503 U.S. 140, 146-47 (1992)). Numerous courts have agreed. *See, e.g.,United States v. Zukerman*, No. 16 CR. 194 (AT), 2020 WL 1659880, at **2–4 (S.D.N.Y. Apr. 3, 2020)*; United States v. Colvin*, No. 19 Cr. 179, 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020) ("[I]n light of the urgency of [d]efendant's request, the likelihood that she cannot exhaust her administrative appeals during her remaining eleven days of imprisonment, and the potential for serious health consequences, the [c]ourt waives the exhaustion requirement of Section 3582(c)(1)(A)."); *United States v. Powell*, 94 Cr. 316, ECF No. 98 (D.D.C. Mar. 28, 2020) (waiving exhaustion under § 3582(c)(1)(A) where the [c]ourt found that "requiring defendant to first seek relief through the [BOP] administrative process would be futile"). For the reasons that follow, the Court holds that, due to the unique and unforeseen threat posed by the COVID-19 pandemic to this Defendant because of his specific health conditions, the exhaustion of administrative process can be waived.

The Court notes the following language from *Zukerman*:

Section 3582(c)(1)(A) imposes "a statutory exhaustion requirement" that "must be strictly enforced." *United States v. Monzon*, No. 99 Cr. 157,

6

2020 WL 550220, at *2 (S.D.N.Y. Feb. 4, 2020) (citing *Theodoropoulos v. I.N.S.*, 358 F.3d 162, 172 (2d Cir. 2004) (internal quotation marks and alterations omitted)).[] However, as this Court and others have held, the requirement of completing the administrative process may be waived "if one of the recognized exceptions to exhaustion applies." *United States v. Perez*, No. 17 Cr. 513-3, 2020 WL 1546422, at *2 (S.D.N.Y. Apr. 1, 2020); see *United States v. Colvin, No. 1*9 Cr. 179, 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020) ("[I]n light of the urgency of [d]efendant's request, the likelihood that she cannot exhaust her administrative appeals during her remaining eleven days of imprisonment, and the potential for serious health consequences, the [c]ourt waives the exhaustion requirement of Section 3582(c)(1)(A)."); *United States v. Powell*, 94 Cr. 316, ECF No. 98 (D.D.C. Mar. 28, 2020) (waiving exhaustion under § 3582(c)(1)(A) where the [c]ourt found that "requiring defendant to first seek relief through the [BOP] administrative process would be futile").

"Even where exhaustion is seemingly mandated by statute ..., the requirement is not absolute." *Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019) (citing *McCarthy v. Madigan*, 503 U.S. 140, 146–47 (1992)).[] There are three circumstances where failure to exhaust may be excused. "First, exhaustion may be unnecessary where it would be futile, either because agency decisionmakers are biased or because the agency has already determined the issue." *Id*. Second, "exhaustion may be unnecessary where the administrative process would be incapable of granting adequate relief." *Id*. at 119. Third, "exhaustion may be unnecessary where pursuing agency review would subject plaintiffs to undue prejudice." *Id*.

All three of these exceptions apply here. "[U]ndue delay, if it in fact results in catastrophic health consequences, could make exhaustion futile. Moreover, the relief the agency might provide could, because of undue delay, become inadequate. Finally, and obviously, [Zukerman] could be unduly prejudiced by such delay." *Washington*, 925 F.3d at 120–21; *see Bowen v. City of New York*, 476 U.S. 467, 483 (1986) (holding that irreparable injury justifying the waiver of exhaustion requirements exists where "the ordeal of having to go through the administrative process may trigger a severe medical setback" (internal

7

> quotation marks, citation, and alterations omitted)); *Abbey v. Sullivan*, 978 F.2d 37, 46 (2d Cir. 1992) ("[I]f the delay attending exhaustion would subject claimants to deteriorating health, ... then waiver may be appropriate."); *New York v. Sullivan*, 906 F.2d 910, 918 (2d Cir. 1990) (holding that waiver was appropriate where "enforcement of the exhaustion requirement would cause the claimants irreparable injury" by risking "deteriorating health, and possibly even ... death"); *see also Perez*, 2020 WL 1546422, at *2–3 (holding that § 3582(c)(1)(A)'s exhaustion requirement could be waived where delay carried the risk of the vulnerable defendant contracting COVID-19). Here, even a few weeks' delay carries the risk of catastrophic health consequences for Zukerman. The Court concludes that requiring him to exhaust administrative remedies, given his unique circumstances and the exigency of a rapidly advancing pandemic, would result in undue prejudice and render exhaustion of the full BOP administrative process both futile and inadequate.
>
> To be sure, "the policies favoring exhaustion are most strongly implicated" by challenges to the application of existing regulations to particular individuals. *Pavano v. Shalala*, 95 F.3d 147, 150 (2d Cir. 1996) (internal quotation marks, citation, and alterations omitted). Ordinarily, requests for a sentence reduction under § 3582(c) would fall squarely into that category. But "courts should be flexible in determining whether exhaustion should be excused," *id.* at 151, and "[t]he ultimate decision of whether to waive exhaustion ... should also be guided by the policies underlying the exhaustion requirement." *Bowen*, 476 U.S. at 484. The provision allowing defendants to bring motions under § 3582(c) was added by the First Step Act, in order to "increas[e] the use and transparency of compassionate release." 132 Stat. 5239. Requiring exhaustion generally furthers that purpose, because the BOP is best situated to understand an inmate's health and circumstances relative to the rest of the prison population and identify "extraordinary and compelling reasons" for release. 18 U.S.C. § 3582(c)(1)(A)(i). In Zukerman's case, however, administrative exhaustion would defeat, not further, the policies underlying § 3582(c).

*Zukerman*, 2020 WL 1659880, at **2–3 (footnotes omitted).

The Court finds that there are several factors that weigh in favor of Defendant's release from FCI Milan. Defendant is 71 years old and, most significantly, suffers from chronic kidney disease, hypertension, pulmonary hypertension, and sleep apnea. In December 2019, doctors at St. Joseph's Hospital in Ann Arbor, Michigan, diagnosed him with suspected recurrent bladder cancer, a diagnosis that has not been evaluated by any health care professional since then but, if confirmed, would constitute a severe threat to his health even absent the COVID-19 pandemic. Pursuant to the COVID-19 pandemic, it appears to the Court that Defendant's age and conditions place him in the "highest risk category for complications and death from the disease if infected." *See, e.g., Zukerman*, 2020 WL 1659880, at *4; *Basank v. Decker*, 2020 WL 1481503, at *3 (S.D.N.Y. Mar. 26, 2020) ("The Court takes judicial notice that, for people of advanced age, with underlying health problems, COVID-19 causes severe medical conditions and has increased lethality.") (citation omitted).

Even if the Court were to accept the argument that the BOP and FCI Milan are taking precautions to ensure the safety of prisoners, Defendant's risk of contracting COVID-19 is not speculative. There have been numerous cases of COVID-19 at FCI Milan, both among prisoners and staff. Defendant has been exposed to COVID-19, as his cell mate tested positive for COVID-19, and Defendant was placed in

quarantine.[2]

The Court is cognizant that most of Defendant's health conditions existed at the time of sentencing, something the Court specifically referenced and took into account in sentencing Defendant to 72 months rather than the 120 months set forth in the plea agreement.

> The Court: And so I'm concerned that your medical care be taken care of in the prison and that you not have an opportunity to not have the care that you might need.
>
> I'm also to consider whether any other correctional treatment would be available to you and that includes treatment for things like substance abuse meaning of illegal or legal substances and also any gambling or other kinds of addictions.

ECF No. 38, PgID 352.

> The Court: I have noted that in the Presentence Report I think it lists all of the medications that you take on page 15 and I have noted that there are not just one issue, meaning the bladder cancer and the ability for it to become more aggressive, but also that there is the knee and the heart problem and the diabetic problem. And there are numerous of them outlined in Paragraph 54.
>
> And I hope I'm not saying anything that is inappropriate to say relative to your health conditions, but there are a lot of these.

---

[2]Defendant reports that his cell mate was sent to the hospital due to the COVID-19 infection. Defendant represents that he is now in quarantine and isolation in the Segregated Housing Unit ("SHU") because of that exposure. In its response, the Government does not address Defendant's alleged exposure to COVID-19 from his cellmate or Defendant's representation that he is in the SHU under quarantine and isolation.

> And I'm concerned that there be some management of that, that maybe you can't always get in the prison system.

ECF No. 38, PgID 354.[3]

The Court is cognizant that Defendant is not scheduled to be released for more than three years, but it cannot ignore that the threat of COVID-19 exists now. As set forth above, Defendant: (a) has serious known underlying illnesses – and may be facing a recurrence of bladder cancer; (b) is detained in a facility where positive cases of the virus have been found, including his cell mate; and (c) like other inmates, Defendant is unable to take adequate measures to protect himself.

The Court holds that Defendant's age, serious health conditions, and the high risk of contracting COVID-19 at FCI Milan justify the waiver of the exhaustion requirement.

### B.     *Extraordinary and Compelling Reason*

The Government contends that, even if the Court asserts jurisdiction,

---

[3]As Defendant argues, those concerns may have manifested as Defendant may have suffered a recurrence of bladder cancer, something which was discovered at a hospital visit over four months ago and communicated to his family and the BOP. Despite the hospital requesting an imaging to determine whether the cancer has returned, no action has taken by the BOP to have that imaging conducted, even for a matter as serious as cancer. The fact that Defendant has a series of vulnerable preexisting conditions such that he is more susceptible to COVID-19 and may also have a recurrence of cancer, make him even more vulnerable.

11

Defendant's history and conditions do not warrant a compassionate release. The Government argues that Defendant's reliance on medical issues he had at the time of sentencing (kidney disease, hypertension, sleep apnea and shingles) is not persuasive, as none of those conditions are alleged to have worsened, at least not sufficiently to justify compassionate release. The Court disagrees.

Although the sentence imposed on Defendant was just, the Court holds that the threat posed by COVID-19, in light of Defendant's age and his underlying health conditions, constitutes an "extraordinary and compelling reason" to modify his sentence under 18 U.S.C. § 3582(c)(1)(A)(I). As stated by the *Zukerman* court, "[t]he severity of [Defendant]'s conduct remains unchanged. What has changed, however, is the environment where [Defendant] is serving his sentence. When the Court sentenced [Defendant], the Court did not intend for that sentence to 'include incurring a great and unforeseen risk of severe illness or death' brought on by a global pandemic." *Zukerman*, 2020 WL 1659880, at *6 (citing *United States v. Rodriguez*, 2020 WL 1627331, at *12 (E.D. Pa. Apr. 1, 2020)).

The United States Sentencing Commission has defined "extraordinary and compelling reasons." *See* U.S.S.G. § 1B1.13, comment n.1. There are extraordinary and compelling reasons for modification where "[t]he defendant is ... suffering from a serious physical or medical condition ... that substantially diminishes the ability to

provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 comment n.1(A)(ii).

In this case, Defendant's age, together with his chronic kidney disease, hypertension, pulmonary hypertension, and sleep apnea (as well as possible bladder cancer and Defendant's other health issues), meet that requirement. As the World Health Organization has determined, the populations most at risk of suffering severe health risks from COVID-19 are "older people, and those with underlying medical problems like cardiovascular disease [and] cancer." Coronavirus, World Health Organization (Apr. 27, 2020), https://www.who.int/health-topics/coronavirus#tab=tab_1. According to the United States Center for Disease Control, persons over the age of 65 and individuals of any age who have serious underlying medical conditions, including serious heart conditions, chronic kidney disease undergoing dialysis, and cancer treatment are at higher risk for severe illness from COVID-19. People Who Are at Higher Risk for Severe Illness, Centers for Disease Control and Prevention (April 27, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html.

Defendant is among those persons most at risk. Data released by the CDC indicates that approximately 80% of deaths from COVID-19 in the United States occur in individuals age 65 or older and that the fatality rate for individuals aged 65

to 84 could be as high as 11 percent. Severe Outcomes Among Patients with Coronavirus Disease 2019 (COVID-19) – United States, February 12 – March 16, 2020, Centers for Disease Control and Prevention (Mar. 26, 2020), https://www.cdc.gov/mmwr/volumes/69/wr/mm6912e2.htm. As an inmate at FCI Milan, Defendant has already been exposed to COVID-19.

This Court and others have held that compassionate release is justified under such conditions. *United States v. Doshi*, No. 13-20349, ECF No. 145 (E.D. Mich. Mar. 31, 2020) (recommending that the BOP release 64 year old defendant with diabetes and hypertension to home confinement); *Perez*, 2020 WL 1546422, at *4 (the defendant was at risk of experiencing serious complications from COVID-19 due to medical complications arising from two vicious beatings while he was incarcerated); *Colvin*, 2020 WL 1613943, at *4 (D. Conn. Apr. 2, 2020) (finding "extraordinary and compelling reasons justifying ... immediate release under Section 3582(c)(1)(A) and U.S.S.G. § 1B1.13" where defendant has "diabetes, a serious medical condition which substantially increases her risk of severe illness if she contracts COVID-19" (internal quotation marks, citation, and alteration omitted)); *Rodriguez*, 2020 WL 1627331, at *7 (granting compassionate release where defendant was "in the higher risk category for developing more serious disease" if exposed to COVID-19 because he "has Type 2 diabetes mellitus with diabetic neuropathy, essential hypertension, obesity, and

14

abnormal liver enzymes in a pattern most consistent with non-alcoholic fatty liver disease") (internal quotation marks and citations omitted); *United States v. Jepsen*, 19 Civ. 73, 2020 WL 1640232, at *5 (D. Conn. Apr. 1, 2020) (granting compassionate release to defendant who "is immunocompromised and suffers from multiple chronic conditions that are in flux and predispose him to potentially lethal complications if he contracts COVID-19"); *United States v. Gonzalez*, No. 18 Cr. 1536155, 2020 WL 1536155, at *3 (approving compassionate release where defendant "is in the most susceptible age category (over 60 years of age) and her COPD and emphysema make her particularly vulnerable"); *United States v. Muniz*, 09 Cr. 199, 2020 WL 1540325, at *2 (finding extraordinary and compelling circumstances because "[d]efendant has been diagnosed with serious medical conditions that, according to reports from the Center[s] for Disease Control, make him particularly vulnerable to severe illness from COVID-19 ... includ[ing] inter alia, end stage renal disease, diabetes, and arterial hypertension."); *United States v. Campagna*, No. 16 Cr. 78-01, 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020) (approving compassionate release for defendant where his "compromised immune system, taken in concert with the COVID-19 public health crisis, constitutes an extraordinary and compelling reason to modify [d]efendant's sentence on the grounds that he is suffering from a serious medical condition that substantially diminishes his ability to provide self-care").

For the reasons stated above, the Court finds that Defendant has demonstrated that extraordinary and compelling reasons justify a modification of his term of imprisonment.

C. *Conclusion*

The BOP recently was allowed to "lengthen the maximum amount of time for which [it] is authorized to place a prisoner in home confinement." Coronavirus Aid, Relief, and Economic Security Act (CARES Act), § 12003(b)(2), Pub. Law 116-136, 134 Stat 281, 516 (Mar. 27, 2020). The Attorney General has issued two directives to the BOP ordering the Bureau of Prisons to use the "various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic." (03-26-2020 Directive to BOP, at 1; 04-03-2020 Directive to BOP, at 1). The statutory authorities include the requirements in 18 U.S.C. § 3624(c) and (g) for home confinement in general, as well as the requirements in 34 U.S.C. § 60541(g) for some elderly and terminally ill offenders. The directives also require the Bureau of Prisons to identify the inmates most at risk from COVID-19 and "to consider the totality of circumstances for each individual inmate" in deciding whether home confinement is appropriate. (03-26-2020 Directive to BOP, at 1). Finally, the directives instruct the Bureau of Prisons to consider "all at-risk inmates—not only those who were previously eligible for transfer" into home confinement. (04-03-2020

Directive to BOP, at 2).

For the reasons stated above, the Court grants Defendant's Emergency Motion for Immediate Reduction of Sentence (Compassionate Release) pursuant to 18 U.S.C. § 3582(c)(1)(A). The Court reduces Defendant's sentence to time served, and the Court imposes a term of supervised release equal to the unserved portion of his original term of imprisonment (as calculated by the BOP). Defendant has been in a segregated special unit for high-risk prisoners for more than 14 days ago where no inmate has tested positive or showed symptoms of COVID-19 within the past 14 days. The Court therefore finds it unnecessary for the BOP to hold Defendant for a 14-day quarantine in order to protect the public and orders the BOP to release Defendant immediately.

Defendant shall serve the new term of supervised release under home confinement, with electronic location monitoring to commence as soon as the Probation Department can safely install the necessary electronic monitoring equipment and upon such other conditions as the Probation Department deems necessary. The original 12 month period of supervised release is canceled.

## IV. Conclusion

Accordingly,

IT IS ORDERED that Defendant's Emergency Motion for Immediate

Reduction of Sentence (Compassionate Release) [ECF No. 60] is GRANTED.

IT IS FURTHER ORDERED that Defendant's sentence of imprisonment is reduced to time served.

IT IS FURTHER ORDERED that the BOP shall release Defendant immediately, without holding for a 14-day quarantine period at FCI-Milan, and Defendant shall remain self-quarantined for 14 days after release.

IT IS FURTHER ORDERED that, immediately upon release, Defendant shall commence a new term of supervised release that is equal to the unserved portion of his original term of imprisonment (as calculated by the BOP).

IT IS FURTHER ORDERED that Defendant shall serve the new term of supervised release under home confinement, with electronic location monitoring to commence as soon as the Probation Department can safely install the necessary electronic monitoring equipment and upon such other conditions as the Probation Department deems necessary.

IT IS FURTHER ORDERED that, within 24 hours of release from BOP custody, Defendant shall call the Probation Department to schedule an appointment.

IT IS FURTHER ORDERED that Defendant's original 12 month term of supervised release imposed by the Court is canceled.

IT IS ORDERED.

Dated: May 5, 2020                              s/Denise Page Hood
                                                DENISE PAGE HOOD
                                                UNITED STATES DISTRICT JUDGE